**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CAROL J. B.,                                           )
                                                       )
                 Plaintiff,                 )
                                                       )
vs.                                                    )          Case No. 20-CV-534-JFH-JFJ
                                                       )
KILOLO KIJAKAZI,[1]                                    )
Acting Commissioner of Social Security,                )
                                                       )
                 Defendant.                 )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Carol J. B. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.      General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.

2

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 49-year-old female, applied for Title II disability insurance benefits on January 2, 2018, alleging a disability onset date of June 29, 2016, later amended to January 2, 2018. R. 15, 214, 204-205. Plaintiff claimed she was unable to work due to numerous conditions, including chronic nagging headaches, chronic neck pain, slipped discs, pinched nerve/arthritis, torn rotator right cuff, diabetes, chronic upper and lower back pain, pain in right arm with numbness in right hand, arthritis in both knees and cartilage broken down, chronic roaming and stabbing pain throughout body, anxiety, depression, and bladder leakage and accidents. R. 219. Plaintiff's claim for benefits was denied initially on July 18, 2018, and on reconsideration on October 30, 2018. R. 100-139. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on November 6, 2019. R. 40-85. The ALJ issued a decision on February 4, 2020, denying benefits and finding Plaintiff not disabled because she could perform other work

existing in the national economy.  R. 15-32.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2018.  R. 17.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 2, 2018, through her date last insured of December 31, 2018.  R. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder; major depressive disorder; chronic pain syndrome; osteoarthritis of the bilateral knees; obesity; migraine headaches; lumbar radiculopathy; and cervical radiculopathy.  *Id.*  She found Plaintiff's medically determinable impairments of a right index finger issue, osteoarthrosis of the right hand, and urinary incontinence due to prolapse post-surgery to be non-severe.  R. 18-19.  She further found Plaintiff's impairment of fibromyalgia to be medically non-determinable.  R. 21.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 19-21.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  R. 20-21.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that, though the date last insured of December 31, 2018, Plaintiff had the RFC to perform less than a full range of light work, with the following limitations:

> [S]he could not climb ropes, ladders, or scaffolds.  She could occasionally interact with supervisors, coworkers, and the general public.  She could occasionally climb ramps and stairs; stoop; crouch crawl; kneel; and balance on uneven, moving, or narrow surfaces.  She could perform no tandem or teamwork.  She could understand, remember, and carry out simple tasks with simple instructions in a routine work setting (SVP 1-2).

R. 21.  At step four, the ALJ found that Plaintiff was unable to perform past relevant work.  R. 29-

30.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five

that Plaintiff could perform other light unskilled work, such as Laundry Sorter, Folder, and

Mailroom Clerk.  R. 30-31.  The ALJ determined the VE's testimony was consistent with the

information contained in the Dictionary of Occupational Titles ("DOT").  R. 31.  Based on the

VE's testimony, the ALJ concluded these positions existed in significant numbers in the national

economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled through the date last

insured.

## III.    Issues

Plaintiff raises four points of error in her challenge to the denial of benefits, which the

undersigned re-organizes for clarity: (1) the ALJ improperly failed to include manipulative

limitations in the RFC; (2) the ALJ improperly evaluated Plaintiff's fibromyalgia; (3) the ALJ

improperly evaluated the medical source opinion evidence; and (4) the ALJ's consistency analysis

was flawed.  ECF No. 16.

## IV.    Analysis

### A.    ALJ Properly Considered Plaintiff's Manipulative Abilities

Plaintiff argues the ALJ committed reversible error by failing to include any reaching,

handling, or fingering limitations in the determinative RFC.[2]  In support, Plaintiff points to a

finding at her April 2018 physical consultative exam that neuropathy was "affecting her lower

---

[2] Plaintiff titles this allegation of error with the following vague title: "The ALJ failed to properly
consider, evaluate, and weigh all the medical evidence and failed to provide adequate rationale for
the decisional RFC resulting in fatal and reversible error."  ECF No. 16 at 4.  Upon review of the
substance of this allegation, the undersigned finds the only developed argument to be that
pertaining to Plaintiff's manipulative abilities.  ECF No. 16 at 7.  The remainder of this section
consists of several pages of conclusory, disjointed, and incoherent arguments that are insufficiently
developed for the undersigned to review, and they are therefore waived.  *See Femedeer v. Haun*,
227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an
issue are not sufficient to invoke appellate review.") (cleaned up).

extremities and right hand." R. 824.  Plaintiff argues that the findings of the consultative examiner, Christopher Thompson, D.O., demonstrate limited and painful range of motion in all extremities, requiring manipulative limitations.

Plaintiff's argument is unpersuasive.  In establishing the RFC for reduced light work, the ALJ documented Plaintiff's complaints of numbness and tingling in the right arm, as well as weakened right-hand grip, in 2018.  R. 19, 25-26.  The ALJ further noted, however, that objective testing was generally normal.  Specifically, in March 2017, a bilateral upper extremity EMG was within normal limits.  R. 25 (citing R. 542).  Physical examination in February and April 2018 revealed upper extremity motor strength of 5/5 and bilateral grip strength of 5/5.  R. 471, 545.  At the consultative exam, Dr. Thompson also observed equal grip and great toe strength rated at 5/5, ability to pick up and manipulate paperclips without difficulty, and normal fine tactile manipulation of objects.  R. 824.  Dr. Thompson further observed normal shoulder, elbow, wrist, and hand/finger mobility, apart from 100/150 right shoulder abduction in supination and 100/150 right shoulder forward elevation.  R. 826-827.  Dr. Thompson noted no specific manipulative functional limitations, and he indicated she could effectively oppose the thumb to the fingertips, could manipulate small objects, and effectively grasp tool such as a hammer.  R. 827.  Dr. Thompson noted pain with movement of extremities and limited range of motion of the spine, but her manipulative abilities were not notably deficient.  R. 824.  In August 2019, Plaintiff's care provider observed normal motor strength in the bilateral upper extremities, rated at 5/5 and symmetrical.  R. 973.  The state agency physical reviewers also reviewed Dr. Thompson's findings and concluded that Plaintiff could perform light work without manipulative limitations.  R. 110-111, 132-134.

The ALJ noted Dr. Thompson's assessment of neuropathy "affecting her lower extremities and right hand (rule out carpal tunnel)."  R. 26 (citing R. 824).  Dr. Thompson did not explain what

he meant by the statement that Plaintiff's neuropathy "affected" her right hand, but Dr. Thompson's observations indicated that she had no specific deficiency in reaching, grasping, handling, or fingering during the consultative exam, apart from some limitation in right shoulder mobility.  The ALJ also found Dr. Thompson's opinion that Plaintiff could effectively oppose her thumb to fingertip, manipulate small objects, and effectively grasp tools to be persuasive.  R. 29. Plaintiff does not elaborate on her argument that further manipulative limitations were required in the RFC, nor does she point to any additional records demonstrating functional manipulative difficulties.

Plaintiff appears to rely on Dr. Thompson's diagnosis of neuropathy.  However, it is not the diagnosis, but the resulting functional limitations, that determine disability.  *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).  The ALJ appropriately relied on medical evidence showing that Plaintiff did not demonstrate manipulative limitations on exam, including at Dr. Thompson's exam.  As a result, the ALJ was not required to eliminate any of the step-five jobs from consideration based on Dr. Thompson's assessment.  *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding that a hypothetical question to VE must contain "only . . . those impairments borne out by the evidentiary record").

B.     **ALJ Properly Evaluated Fibromyalgia**

Plaintiff argues the ALJ improperly found her fibromyalgia to be medically non-determinable and improperly failed to impose additional RFC limitations to account for fibromyalgia symptoms.  At step two, the ALJ found fibromyalgia to be medically non-determinable.  R. 19.  The ALJ noted that the evidence did not qualify under Social Security Ruling ("SSR") 12-2p for diagnosis of fibromyalgia.  *Id.*  The ALJ explained that, apart from Dr. Thompson's finding at the consultative exam of 18/18 positive tender points and his assessment of fibromyalgia in April 2018 (R. 824, 829), the longitudinal evidence for the relevant period did

not establish at least 11 positive tender points on examination.  R. 19.  The ALJ further explained that treatment records from Plaintiff's primary pain management provider did not contain a diagnosis of fibromyalgia later than April 2017, approximately eight months before the alleged onset date of January 2, 2018.  *Id.* (citing R. 603).  Finally, the ALJ explained that the longitudinal evidence showed that other disorders, including chronic pain syndrome, osteoarthritis, and migraines or headaches, could account for Plaintiff's signs and symptoms and had not been ruled out.  *Id.*

Plaintiff contends the ALJ failed to account for all possible symptoms of fibromyalgia, failed to acknowledge that symptoms of fibromyalgia can wax and wane, and failed to address her widespread pain as indicative of fibromyalgia.  In support, Plaintiff points to (1) her own testimony that she was frequently in pain and fatigued, had difficulty sleeping, had difficulty dressing herself, dropped things frequently, and required frequent bathroom breaks (R. 58-62, 64); (2) a September 2018 notation from an orthopedic nurse, which indicated that Plaintiff's referring primary care physician had noted symptomatic fibromyalgia (R. 402); (3) her diagnosis of fibromyalgia prior to the alleged onset date (R. 488), and her later treatment for pain of the spine and knees; and (4) evidence of her widespread pain (R. 450-473, 475-493).  She also alleges the ALJ  "never mentioned" further evidence "showing the presence of tender points, examination findings, and symptoms supporting the [fibromyalgia] diagnosis" (ECF No. 16 at 12), but she cites only to the ALJ's assessment of fibromyalgia (R. 19), and she does not cite to additional record evidence.

Plaintiff's arguments fail.  Contrary to Plaintiff's argument, the ALJ properly applied SSR 12-2p to find fibromyalgia to be medically non-determinable.  SSR 12-2p explains that, in determining whether fibromyalgia is a medically determinable impairment, the ALJ "cannot rely upon the physician's diagnosis alone."  SSR 12-2p.  Rather, "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam," and the ALJ

"will review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." *Id.* To establish fibromyalgia as a medically determinable impairment, the ALJ must both establish the requisite symptoms under either the 1990 or the 2010 standard, and find "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.*

Here, Dr. Thompson diagnosed fibromyalgia based on positive trigger points at a single exam, but he did not attempt to establish that the symptoms did not stem from another disorder. The ALJ found that Plaintiff had other severe impairments, namely chronic pain syndrome, migraine headaches, and osteoarthritis, that could account for her symptoms. R. 19. This analysis was consistent with SSR 12-2p: "If we cannot find that the person has [a medically determinable impairment] of [fibromyalgia] but there is evidence of another [medically determinable impairment], we will not evaluate the impairment under this Ruling. Instead, we will evaluate it under the rules that apply for that impairment." The ALJ's analysis was also consistent with that of the agency reviewers. The initial physical reviewer found that Plaintiff had a spine disorder, and the reconsideration reviewer found both a spine disorder and osteoarthritis as medically determinable impairments, and neither found Plaintiff had fibromyalgia. R. 108-109, 129.

While Plaintiff correctly points to a notation dated April 2018 indicating that her referring doctor identified symptomatic fibromyalgia as one of her conditions, Plaintiff does not point to any testing to establish fibromyalgia within the relevant period, apart from the consultative exam. The ALJ appropriately explained that her medical records in 2018 did not establish fibromyalgia, and that Plaintiff was being treated for various pain-producing conditions in 2018 that could account for her various symptoms separately from fibromyalgia. While the ALJ did not find

Plaintiff's fibromyalgia to be a medically determinable impairment, she plainly considered Plaintiff's chronic pain-producing conditions throughout the decision.  The ALJ extensively discussed Plaintiff's medical records pertaining to her severe conditions, including her treatment for chronic pain.  R. 24-28.  Plaintiff points to no functional limitations in the record that contradict the ALJ's findings or that the ALJ failed to address in the decision.  It is not the diagnosis, but the resulting functional limitations that determine disability.  *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).  Accordingly, the undersigned identifies no error.

### C.      Plaintiff Has Waived Argument Regarding Medical Source Opinions

Plaintiff argues that the ALJ improperly considered the opinions of the consultative examiners.  She argues the ALJ "ignored findings and opinions that are consistent with disability" in evaluating those opinions.  ECF No. 16 at 8.  However, Plaintiff's arguments in this section are completely unsupported by any record evidence and are entirely conclusory.  Plaintiff also appears to be erroneously relying on the previous standard for evaluating medical opinions, which required "weighing" medical opinions and placing greater emphasis on treating relationships.  Contrary to Plaintiff's conclusory argument that the ALJ was obliged to assign an examining source opinion greater "weight" than the state agency reviewers' opinions, the current regulations, applicable to Plaintiff's claims, do not require "weighing" opinions against each other and do not require discussion of a medical source's treating relationship.  *See* 20 C.F.R. § 404.1520c(b)(2).  Plaintiff further contends, without support, that her "severe impairments as determined by the ALJ also conflict with the RFC."  ECF No. 16 at 9.

The undersigned concludes that Plaintiff has waived any argument in this allegation of error, as her arguments in this section are unsupported, conclusory, and inexcusably rely on an outdated standard for evaluating medical source opinions.  *See Femedeer*, 227 F.3d at 1255.  This court will not search the administrative record for any possible error or develop an argument on

Plaintiff's behalf.  *See Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (explaining that "judges are not like pigs, hunting for truffles buried in briefs") (cleaned up); *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) (stating that the court "will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim") (cleaned up).

### D.   ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities."  *Id.*  If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities."  *Id.*  Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3).[3]

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis.  *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a "consistency" and "credibility" analysis.  *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 23. As support, the ALJ stated that, despite Plaintiff's complaints, the medical evidence showed that she often denied medication side effects. *Id.* (citing R. 968-1063). *See* R. 1051 (Plaintiff denied any side effects from the use of controlled substances at October 2018 pain management visit), R. 977 (Plaintiff denied medication side effects at May 2019 pain management visit), R. 970 (same at July 2019 pain management visit). The ALJ further stated that complaints of drowsiness and/or falling possibly due to prescriptions Topamax and/or Cymbalta were immediately addressed. *Id.* (citing R. 413, 550). *See* R. 416 (care provider advised Plaintiff in August 2018 to hold her Topamax to see if it caused a decrease in feeling unsteady on her feet during the night). The ALJ further stated that Plaintiff was able to return to both medications without continued complaint. *Id.* (citing R. 968-1063).

Further, in other parts of the decision, the ALJ commented on consistency with respect to her various complaints. For example, the ALJ noted that, in January 2018, Plaintiff was in no acute distress despite her report of pain at a seven on a 10-point scale, and Plaintiff stated that Topamax helped her headaches and overall pain. R. 24 (citing R. 550-552). In addition, despite

12

Plaintiff's claim of difficulty using her hands, the ALJ noted her grip strength was 5/5 and she was able to pick up and manipulate paperclips without difficulty at the April 2018 consultative exam. R. 22 (testimony), R. 26 (citing R. 822-829).  Records also revealed that Plaintiff's pain improved with physical therapy sessions in 2018.  R. 27 (citing R. 312-399).  See R. 394 (Plaintiff reported pain relief with therapy sessions in June 2018).   Plaintiff alleges the ALJ's analysis was insufficient, because the ALJ failed to account for Plaintiff's testimony as to the extent of her limitations; the ALJ failed to note that there was no indication of exaggeration of her symptoms; and the ALJ failed to account for Plaintiff's financial reasons for not seeking further treatment. ECF No. 16 at 15-16.

The undersigned finds that the ALJ's consistency analysis was proper.  First, the ALJ appropriately explained that Plaintiff's alleged medication side effects were unsupported in the record, and Plaintiff points only to her own testimony in support of any side effects.  R. 55-56.  As the ALJ explained, Plaintiff's reported complaints of medication side effects were promptly addressed.  R. 23.  Plaintiff further cites to her own testimony in support of other limitations, such as difficulty dressing herself, dropping things, and limited daily activities (R. 58-61), but the ALJ noted Plaintiff's testimony and found it was not entirely consistent with the medical record.  R. 22-23.  The ALJ appropriately noted that Plaintiff demonstrated full manipulative abilities at the consultative exam and she improved with treatment.  R. 23-28.

Second, the fact that the mental consultative examiner found her reports did "not seem to include intentional or misleading over/underreporting" (R. 834) does not undermine the ALJ's consistency finding.  The ALJ is required to conduct an independent evaluation of Plaintiff's consistency and is not bound by whether her physicians find her complaints to be exaggerated. See SSR 16-3p (stating that ALJ should consider multiple factors to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms).

Finally, Plaintiff's challenge to the consistency finding based on her financial inability to pursue treatment lacks support in the record.  Plaintiff points to the ALJ's notation that Plaintiff "declined a referral for community mental health services" (R. 23), arguing that the ALJ failed to account for her financial ability to pursue such services.  However, the ALJ's notation comes from Plaintiff's mental consultative exam, at which the consultative examiner, Timothy Doty, Psy.D., noted Plaintiff's own report that she had been referred to Family and Children's Services, "but ha[d] not wanted to pursue the referral."  R. 833.  Plaintiff stated she had been a transporter for a client who attended therapy there and "did not like the experience."  *Id.*  At that examination, Plaintiff did not give her financial condition as a reason for not pursuing mental health treatment. At the hearing, Plaintiff indicated that she could not find a mental health provider who would take her Soonercare insurance (R. 62), but this testimony appears unrelated to the reason she chose not to pursue mental health treatment with Family and Children's Services in April 2018.

Plaintiff further cites a notation from a June 2018 endocrinology visit.  At that visit, it was noted that Plaintiff was having swelling in her lower extremity, which she thought was fibromyalgia, but she "ha[d] not been able to go back to rheumatology as she ha[d] a balance."  R. 1113.  The undersigned finds that this vague statement does not clearly indicate that Plaintiff was not pursuing medical treatment for financial reasons.  More importantly, Plaintiff fails to show that the ALJ found her consistency to be reduced as a result of not following up with rheumatology. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.  The undersigned finds the ALJ's consistency discussion satisfies SSR 16-3p.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

**OBJECTION**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 3, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 17th day of December, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**